UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Zack McCain,                          :
        Plaintiff,                    :
                                      :
     v.                               :    File No. 1:11-cv-143
                                      :
Buffalo Wild Wings,                   :
Jan Company/Burger King,              :
Martti Matheson,                      :
Eric Felkowski,                       :
Matt Cunningham,                      :
        Defendants.                   :

OPINION AND ORDER
(Docs. 3, 12, 14 and 25)

       Plaintiff Zack McCain, proceeding *pro se*, brings this
action claiming he was twice the victim of employment
discrimination.  Defendants Martti Matheson and Jan
Company/Burger King (hereinafter "Burger King") have each
filed motions to dismiss for failure to state a claim.  (Docs.
12, 14.)  Also pending before the Court are McCain's motion
for appointment of counsel and motion to amend his complaint.
(Docs. 3, 25.)  For the reasons set forth below, Matheson's
motion to dismiss is GRANTED in part and DENIED in part,
Burger King's motion to dismiss is DENIED, and McCain's
motions are DENIED.

Factual Background

       McCain, who is African-American, alleges he has been the
victim of two separate instances of discrimination.  The first
allegedly occurred while he was seeking employment at a
Buffalo Wild Wings restaurant in Burlington, Vermont.  In

response to the restaurant's hiring advertisement, McCain allegedly filed two work applications, one with General Manager Eric Felkowski and one with kitchen manager Matt Cunningham.  In each application, he explained that he could work as either a dishwasher or a "prep cook."

McCain reports that shortly after submitting his applications, he received a cell phone message from a Buffalo Wild Wings employee seeking to schedule an interview.  When he returned the call, however, he was allegedly informed by a female employee that there was no longer a position.  On May 15, 2010, McCain contacted Felkowski, who informed him that over 100 positions had been filled, that he "was going to see how things work out with them," and that McCain should "give him a call in about a month or so, and he would try and get him in."  (Doc. 5 at 3.)

McCain claims that he waited as advised, then tried to reach Felkowski by phone.  After several unsuccessful attempts, he traveled to the Buffalo Wild Wings restaurant and spoke with Cunningham, who informed McCain that there were no prep cook openings.  When McCain asked about a dishwashing position, Cunningham allegedly responded:

> You can't even apply for that position.  They got a
> foreign exchange program, and those guys back there,
> can't even speak English, and I see you can speak
> English clearly.  So you won't be able to understand
> them.  It wasn't my idea anyhow, it was
> [Felkowski]'s.  So you can't even apply for that

2

position, and we have nothing else open, sorry, if
something come[s] open, I'll call you.

(<u>Id.</u> at 4.)

McCain never received a call from Cunningham.  On June
26, 2010, he filed a discrimination charge with the Equal
Employment Opportunity Commission ("EEOC"), claiming Buffalo
Wild Wings was engaged in discriminatory hiring practices "on
the bases of either his national origin or race."  (<u>Id.</u> at 5.)
Buffalo Wild Wings did not respond to the charge, despite
reportedly being contacted by the EEOC on three separate
occasions.  (Doc. 5-1 at 1.)  McCain was contacted directly,
however, by Defendant Martti Matheson, who allegedly stated
"he didn't see how [Buffalo Wild Wings] was discriminating
when they had hired African Sudan[]s (African Immigrants), and
that he was a foreigner himself."  (Doc. 5 at 5.)  The EEOC
subsequently issued a Notice of Right to Sue, finding
"reasonable cause to believe that violations of the statute(s)
occurred with respect to some or all of the matters alleged in
the charge . . . ."  (Doc. 5-2 at 1.)  McCain reports both
Cunningham and Felkowski are no longer employed by Buffalo
Wild Wings.  (Doc. 5 at 8.)

In January 2011, McCain applied for work at a Burger
King restaurant in Colchester, Vermont.  The Assistant Manager
contacted McCain and set up an interview with the restaurant's
Store Manager, Sheila.  Sheila allegedly offered McCain a

position as a night porter for three days a week.  McCain
claims the other night porter, who was white, "would be on for
4 days."  (Id. at 6.)  He also alleges Burger King "failed to
adhere to their promise, and gave plaintiff 2 days a week,
instead [of] 3 days."  (Id.)

The Complaint claims in March 2011, Burger King
"discontinued their contract" with the other night porter.  As
a replacement, the restaurant allegedly hired "Donnie Gordon,
white male, over 40 . . . and gave him 3 days to work, as
opposed to 2 days, as [Burger King] had initially given to the
plaintiff when he had started working."  (Id. at 7.)  The
Complaint also claims that although the first night porter was
given an employment contract, Burger King ignored McCain's
request for a contract.  (Id.)

McCain complained to Store Manager Sheila that sixteen
hours of work per week was not sufficient for him to meet his
living expenses.  When he asked why the other night porter was
given three days of work, and he only two, Sheila reportedly
responded that "they didn't want to be left without [a]
porter."  (Id.)  McCain asserts Sheila's conduct not only
violated his right to "make and enforce contracts" under 42
U.S.C. § 1981, but also constituted retaliation against him
based upon the fact that his wages were being withheld by the

4

State of Vermont pursuant to a child support enforcement order.  (<u>Id.</u> at 7-9.)

In May 2011, an Assistant Manager from a different Burger King location, Mike, came to the Colchester restaurant to "cover for another Manager."  (<u>Id.</u> at 8.)  Mike allegedly proceeded to criticize McCain's job performance, and "made unwelcoming jokes to the plaintiff about black men being with white women, but never commented about black women being with white men."  (<u>Id.</u>)

McCain asserts an array of legal claims against the Defendants, including: race and national origin discrimination in violation of 42 U.S.C. § 1985(3) and Title VII of the Civil Rights Act of 1964; refusal to allow him to enter into a contract, in violation of 42 U.S.C. § 1981; violation of the Equal Protection, Due Process, and Privileges and Immunities Clauses; violation of his constitutional right to travel; and violation of Vermont anti-discrimination law, specifically 21 V.S.A. § 495(a)(1).  For relief, he asks the Court to enjoin Buffalo Wild Wings and its employees from continuing its allegedly discriminatory practices, to issue a declaratory judgment stating that Defendants have acted unlawfully, and to award him compensatory and punitive damages.

<u>Discussion</u>

I.  <u>Motions to Dismiss</u>

Pending before the Court are two motions to dismiss filed by Martti Matheson and Burger King, respectively.  Both motions are filed pursuant to Fed. R. Civ. P. 12(b)(6) and test the legal rather than the factual sufficiency of McCain's Complaint.  <u>See</u>, <u>e.g.</u>, <u>Sims v. Artuz</u>, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'") (quoting <u>Chance v. Armstrong</u>, 143 F.3d 698, 701 (2d Cir. 1998)).  Accordingly, the Court must accept the factual allegations in the Complaint as true, <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007), and draw all reasonable inferences in McCain's favor.  <u>Bolt Elec., Inc. v. City of New York</u>, 53 F.3d 465, 469 (2d Cir. 1995).

The Supreme Court has held that the standard governing a complaint's legal sufficiency is one of "plausibility."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 556-60 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant

6

is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (citing <u>Twombly</u>, 550 U.S. at 556).  The standard does not require a probability of liability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> Pleadings drafted by a *pro se* party must be liberally construed.  <u>Fernandez v. Chertoff</u>, 471 F.3d 45, 51 (2d Cir. 2006).

A.   <u>Martti Matheson</u>

The first dispositive motion before the Court is that of Defendant Martti Matheson.  Matheson is alleged to have communicated directly with McCain on behalf of Buffalo Wild Wings after McCain filed his EEOC charge.  Matheson addresses that specific claim as well as the broader claims against Buffalo Wild Wings, arguing that the allegations in the Complaint "can only be fairly construed as a claim based on reverse national origin discrimination."  (Doc. 12 at 2.)

The Complaint asserts claims of both racial and national origin discrimination.  Specifically, McCain asserts Defendants violated 42 U.S.C. § 1981(b) by denying him the right to make and enforce contracts while entering into contracts with "white or foreign applicants."  (Doc. 5 at 9.) He next claims that by failing to respond to the EEOC's inquiries, Defendants effectively conspired against him "with

class based animosity for being African American" and for his "inability to speak any other language besides English." (Id. at 10.) Third, he claims Defendants violated Title VII by "segregating or classifying the dish washing position exclusively for only foreigners," thus discriminating on the basis of "the plaintiff['s] race, Black or national origin, American . . . ." (Id. at 11-12.) Finally, he claims Defendants violated a state anti-discrimination statute. (Id. at 12.)

Nonetheless, Matheson contends the facts asserted in the Complaint, at least with respect to Buffalo Wild Wings, encompass only discrimination on the basis of national origin, and not race. This contention is supported by even a liberal reading of the Complaint. The fundamental allegation against Buffalo Wild Wings and its agents is that McCain was declined employment because he speaks English. According to the statements by Matt Cunningham, the restaurant was operating either a formal or informal "foreign exchange" program and was hiring only foreign, non-English speaking workers as dishwashers. (Id. at 5.) Furthermore, in Matheson's alleged communication with McCain, he informed McCain the restaurant had been hiring African immigrants workers, thus dispelling the possibility that race was a factor in the hiring process. (Id. at 4.)

In response to the motion to dismiss, McCain argues that race and national origin "overlap" and may be considered "interchangeable" under the law.  (Doc. 22 at 6.)  That contention is misplaced with respect to claims brought under 42 U.S.C. § 1981, as the Second Circuit has established that § 1981 prohibits discrimination on the basis of race, but not national origin.  See Anderson v. Conboy, 156 F.3d 167, 170 (2d Cir. 1998) ("It is settled that Section 1981 does not prohibit discrimination on the basis of . . . national origin.") (citing Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613 (1987)).  Accordingly, to the extent McCain is asserting a § 1981 claim against Matheson, that claim is DISMISSED.

Matheson next argues McCain's Title VII claims must fail because such claims cannot be brought against supervisors, managers, employees or, in Matheson's case, owners.  It is plain that an employer's agents or employees may not be held individually liable under Title VII.  See Tomka v. Seiler Corp., 66 F.3d 1295, 1314 (2d Cir. 1995), abrogated on other grounds by Burlington Indus. v. Ellerth, 524 U.S. 742 (1998).  Even more broadly, the Second Circuit has held that "individuals are not subject to liability under Title VII." Wrighten v. Glowski, 232 F.3d 119, 120 (2d Cir. 2000); see also Patterson v. County of Oneida, 375 F.3d 206, 221 (2d Cir.

2004); Mandell v. County of Suffolk, 316 F.3d 368, 377 (2d Cir. 2003).  Courts within this Circuit have extended have extended this principle to owners, concluding that owners are not "employers" under Title VII.  Joseph v. HDMJ Restaurant, Inc., 685 F. Supp. 2d 312, 318 (E.D.N.Y. 2009) ("the law recognizes no [owner] exception to the individual liability doctrine"); see also Velasquez v. Mirv Coffee, Inc., 1996 WL 706910, *1 (S.D.N.Y. Dec. 6, 1996) (rejecting claims that business owners qualify as "employers" under Title VII); Leykis v. NYP Holdings, Inc., 899 F. Supp. 986, 990 (E.D.N.Y. 1995) (same).  The Title VII claims brought against Matheson are therefore DISMISSED.

Matheson further argues McCain's conspiracy claim under 42 U.S.C. § 1985(3) is barred because that statute does not provide a cause of action for conspiracies to violate Title VII.  Matheson's position is well supported by the case law. See, e.g., Great Am. Fed. Sav. & Loan v. Novotny, 442 U.S. 366, 378 (1979); Gutierrez v. City of New York, 756 F. Supp. 2d 491, 516 (S.D.N.Y. 2010).

To the extent McCain is alleging conspiracies to violate various constitutional provisions, his claims lack factual support.  The Complaint alleges Defendants conspired to deprive McCain of a host of constitutional rights, including his rights to due process and equal protection, but does so

10

only in speculative and conclusory fashion.  To state a claim
under § 1985(3), McCain must allege:

> (1) a conspiracy; (2) for the purpose of depriving,
> either directly or indirectly, any person or class
> of persons of the equal protection of the laws, or
> of equal privileges and immunities under the laws;
> (3) an act in furtherance of the conspiracy; (4)
> whereby a person is either injured in his person or
> property or deprived of any right of a citizen of
> the United States.

Mian v. Donaldson, Lufkin & Jenrette Secs. Corp., 7 F.3d 1085,
1087 (2d Cir. 1993).  To successfully plead such a conspiracy,
he must "'provide some factual basis supporting a meeting of
the minds such that defendants entered into an agreement,
express or tacit, to achieve the unlawful end.'"  Arar v.
Ashcroft, 585 F.3d 559, 569 (2d Cir. 2009) (quoting Webb v.
Goord, 340 F.3d 105, 110 (2d Cir. 2003)); see Emmerling v.
Town of Richmond, 434 F. App'x 10, 12 (2d Cir. 2011)
(affirming dismissal of plaintiff's § 1985(3) claim because
plaintiff "provided only vague and conclusory allegations of
conspiracy").

McCain alleges that

> defendants [Buffalo Wild Wings], Felkowski,
> Matheson, and Cunningham, entered into a conspiracy
> to deprive the plaintiff, a member of a protected
> class, of the privileges, and immunities, that are
> accorded to him, and the class, and other citizens
> throughout the several states, under Article IV,
> Section 2, Clause 1, and alone with his right to
> Travel, a corollary right under this National
> Citizenship status, protected under the 5th, 14th
> Amendments to the U.S. Constitution, with a class
> based discriminatory animosity towards the plaintiff

> and class, from their inability to speak different
> languages, or for being Black, and born in the
> United States, couple[d] with committing overt
> act[s] to further the conspiracy, by either quitting
> their jobs, thereafter, or constructively being
> discharge[d] there from, as a[n] attempt to conceal
> evidence, or thwart the Court of personal
> jurisdiction over them personally, to further the
> conspiracy main objective as [a] result, directly
> violated the deprivation clause, of Title 42 U.S.C.
> Section (3) of 1985.

(Doc. 5 at 10-11.)  These allegations offer no factual support
for a meeting of the minds, and only speculation as to why
Felkowski and Cunningham may have left their employment at
Buffalo Wild Wings.  Such claims of conspiracy are
insufficient, and are therefore DISMISSED.

Matheson's final argument is that, if all federal claims
against him are dismissed, the Court should decline to
exercise supplemental jurisdiction over McCain's state law
claim.  The supplemental jurisdiction statute, 28 U.S.C. §
1367(c)(3), provides that a district court may decline to
exercise jurisdiction over state law claims when the court has
"dismissed all claims over which it has original
jurisdiction."  28 U.S.C. § 1367(c)(3).  Here, the Court has
not dismissed "all claims over which it has original
jurisdiction," as there are still federal claims pending
against other Defendants (including non-moving Defendants).
The Court therefore declines to dismiss the state law claim
against Matheson at this time.  See Cornerstone Consultants,

Inc. v. Prod. Input Solutions, L.L.C., 789 F. Supp. 2d 1029,
1059 (N.D. Iowa 2011) (citing Winegarner v. City of Coppell,
2006 WL 2485847, at *10 (N.D. Tex. Aug. 28, 2006) (noting the
"all claims" language in § 1367(c)(3) and declining to dismiss
plaintiff's state law claims against moving defendants because
federal claims were still pending against other defendants));
see also, e.g., DeFazio v. Wallis, 500 F. Supp. 2d 197, 210-11
(E.D.N.Y. 2007).

    B.  Burger King

    The second motion to dismiss is submitted by Burger King.
McCain's sole legal claim against Burger King is under 42
U.S.C. § 1981, which provides a remedy "against private actors
who intentionally discriminate on the basis of race or
ethnicity." Bologna v. Allstate Ins. Co., 138 F. Supp. 2d
310, 322 (E.D.N.Y. 2001); see Runyon v. McCrary, 427 U.S. 160,
168-75 (1976); Albert v. Carovano, 851 F.2d 561, 571 (2d Cir.
1988). To establish a claim under § 1981, a plaintiff must
allege facts in support of the following elements: (1) the
plaintiff is a member of a racial minority; (2) an intent to
discriminate on the basis of race by the defendant; and (3)
the discrimination concerned one or more of the statutorily
enumerated activities. Mian v. Donaldson, Lufkin & Jenrette
Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993), cert. denied,
516 U.S. 824 (1995). The enumerated activities include the

13

rights "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property."  42 U.S.C. § 1981(a).

Burger King argues the Complaint does not allege facts to support either intentional discrimination or discrimination concerning an enumerated activity.  (Doc. 14-1 at 3.)  Burger King focuses its argument first on McCain's claim that he was provided fewer days of work than his white co-workers.  The motion to dismiss contends "the complaint admits that [the work schedule] was because [McCain] was walking to work from South Burlington, not because of an intent to discriminate." (Id.)

While the Complaint makes reference to the fact that McCain walked to work from South Burlington, it does not concede his commute was the reason he received fewer work hours.  The Complaint states, in relevant part, that McCain received "2 days a week, instead [of] 3 days, as he walked from the University Inn Motel, in South Burlington, where the rooms were being discounted . . . to prevent homelessness, during the cold winter months in Vermont, to [Burger King] in Colchester."  (Doc. 5 at 6.)  The Complaint also alleges McCain received fewer work hours than two white co-workers. (Id. at 5-6).  Giving McCain's *pro se* Complaint the required

14

liberal reading, and drawing all reasonable inferences in his favor, the Court finds the phrase "as he walked from . . . South Burlington" does not explain the difference in treatment, and that reading the Complaint as a whole, McCain is instead asserting a claim of differential treatment on the basis of race.

Burger King also seeks dismissal on the ground that "alleged jokes on a single day by a visiting assistant manager are insufficient to establish a hostile work environment . . . ." (Id. at 3.)  It is not clear, however, that the Complaint is alleging a hostile work environment.  What is clear from the Complaint is McCain believes he has a § 1981 claim based upon Burger King's refusal to "make and enforce" a contract due to his race.  (Doc. 5 at 7, 9.)  Specifically, he claims a white worker was allowed to enter into an employment contract, but his own request for such a contract was ignored.  (Id. at 7.)  Burger King's motion does not address this claim.

In sum, the allegations against Burger King include, but may not be limited to, a refusal to provide equal work opportunities and a refusal to enter into an employment contract, both on the basis of race.  Burger King's first argument – that the Complaint sets forth a non-discriminatory reason for McCain's work schedule – is unpersuasive.  Burger

15

King does not address the employment contract issue.
Accordingly, Burger King's motion to dismiss is DENIED.

II.  Motion to Amend Complaint

Also before the Court is McCain's motion to amend his
Complaint.  The standard for such a motion is that leave to
amend is "freely" given when "justice so requires."  Fed. R.
Civ. P. 15(a)(2).  Nonetheless, "a district court has
discretion to deny leave for good reason, including futility,
bad faith, undue delay, or undue prejudice to the opposing
party."  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184,
200-01 (2d Cir. 2007).  Both Matheson and Burger King oppose
the motion, arguing the proposed amendments are futile.

With respect to Matheson, the Court agrees the new
allegations in the proposed Amended Complaint are futile.  The
Amended Complaint brings no new legal claims against Matheson.
Instead, it supplements McCain's previous claims of a
conspiracy.  The new claims, however, are no less conclusory
or speculative than those presented previously.

McCain first alleges Matheson knew about the EEOC charge,
and "made a tacit agreement with [Buffalo Wild Wings], and
others, to not respond thereto."  (Doc. 25-4 at 7.)  This
claim merely echoes the legal requirement that a conspiracy
claim include an "agreement, express or tacit, to achieve the
unlawful end.'"  Arar, 585 F.3d at 569.  McCain provides no

16

underlying facts to support his claim, <u>see</u> <u>id.</u>, and the proposed amendment is therefore futile.

McCain further alleges Matheson and others at Buffalo Wild Wings conspired "for the purpose of preventing or hindering the United States Marshal Service from securing personal jurisdiction over defendant Cunningham, and Felkowski . . . ." (Doc. 25-4 at 14.)  This allegation presumably relates to the fact that Cunningham and Felkowski are no longer employed at Buffalo Wild Wings.  The claim is similar to McCain's previous contention that Cunningham and Felkowski may have quit their jobs in order to frustrate personal jurisdiction.  As before, these claims are conclusory, speculative, and without factual support.  The motion to amend the claims against Matheson is therefore DENIED.

The Amended Complaint also adds three new legal claims, each of which alleges wrongdoing by Burger King.  The first contends that, in its motion to dismiss, Burger King admits to "discriminating against the plaintiff in the distribution of work hours to him, because of his fundamental rights to movement, or intra-state travel . . . ." (Doc. 25-4 at 16.) McCain further contends this discrimination "on grounds of him exercising his fundamental and guaranteed rights to freedom of movement" violated his right to equal protection. (<u>Id.</u> at 17.)  Neither claim is plausible.

The right to travel from one place to another free of hindrances is a well established aspect of constitutionally protected private freedom.  See Kolender v. Lawson, 461 U.S. 352, 358 (1983).  The Second Circuit has clarified this right "protects *movement between places* and has no bearing on *access* to a particular place." Williams v. Town of Greenburgh, 535 F.3d 71, 75 (2d Cir. 2008) (emphasis in original).  McCain alleges Burger King denied him access to certain work hours; he does not claim Burger King impaired his movement between places.  Indeed, nothing in the alleged conduct of Burger King employees hindered McCain's "freedom of movement." Betancourt v. Bloomberg, 448 F.3d 547, 553 (2d Cir. 2006).

Furthermore, with respect to McCain's equal protection claim, the Fourteenth Amendment's Equal Protection Clause applies only to state actors, and Burger King is a private employer.  See Fitzgerald v. Barnstable Sch. Comm., 555 U.S. 246, 257 (2009) ("The Equal Protection Clause reaches only state actors"); Zaidi v. Amerada Hess Corp., 723 F. Supp. 2d 506, 518 n.3 (E.D.N.Y. 2010) ("[T]he Equal Protection Clause of the Fourteenth Amendment can provide a vehicle for an employment discrimination claim . . . . only where the defendant employer is a state actor, and not where, as here, the employer is a private entity.").  These proposed amendments to the Complaint are therefore DENIED as futile.

18

McCain's third proposed legal claim is brought under the United Nations' Universal Declaration of Human Rights ("UDHR").  The UDHR, however, is "merely aspirational and [was] never intended to be binding on member States of the United Nations."  <u>Flores v. S. Peru Copper Corp.</u>, 414 F.3d 233, 259 n.36 (2d Cir. 2003); <u>see</u> <u>also</u> <u>Guaylupo-Moya v. Gonzalez</u>, 423 F.3d 121, 133 (2d Cir. 2005).  The claim thus provides no cause of action.

Other proposed changes to the Complaint include additional factual allegations against Burger King.  Because Burger King's current motion to dismiss is denied, McCain suffers no prejudice if the Court bars his additional factual allegations at this time.  If McCain wishes to submit another, red-lined proposed Amended Complaint that does not include the futile claims discussed above, along with a motion to amend, the Court will consider additional claims and allegations at that time.  His current motion, however, is DENIED without prejudice.

III.  <u>Motion for Appointment of Counsel</u>

The final motion before the Court is McCain's motion for appointment of counsel.  A federal judge has "broad discretion" when deciding whether to appoint counsel to an indigent litigant.  <u>Hodge v. Police Officers</u>, 802 F.2d 58, 60 (2d Cir. 1986); <u>see</u> <u>Burgos v. Hopkins</u>, 14 F.3d 787, 789 (2d

Cir. 1994).   "There is no requirement that an indigent litigant be appointed *pro bono* counsel in civil matters." Burgos, 14 F.3d at 789; 28 U.S.C. § 1915(e) (formerly 28 U.S.C. § 1915(d)).   Indeed, appointment of *pro bono* counsel must be done judiciously in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance.   Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 172-73 (2d Cir. 1989).

When deciding whether to assign counsel to an indigent civil litigant, the threshold inquiry is whether there is "some likelihood of merit" to the litigant's position. Johnston v. Maha, 606 F.3d 39, 41 (2d Cir. 2010) (quoting Cooper, 877 F.2d at 174); see also Leftridge v. Conn. State Trooper Officer No. 1283, 640 F.3d 62, 68-69 (2d Cir. 2011); Hodge, 802 F.2d at 61.   "[C]ounsel should not be appointed in a case where the merits of the indigent's claim are thin and his chances of prevailing are therefore poor."   Carmona v. U.S. Bureau of Prisons, 243 F.3d 629, 632 (2d Cir. 2001).   If the Court finds the plaintiff's claim is of substance, it should next consider the following factors:

> [T]he indigent's ability to investigate the crucial
> facts, whether conflicting evidence implicating the
> need for cross-examination will be the major proof
> presented to the fact finder, the indigent's ability
> to present the case, the complexity of the legal
> issues and any special reason in that case why
> appointment of counsel would be more likely to lead
> to a just determination.

Hodge, 802 F.2d at 61-62; see also Carmona, 243 F.3d at 632.
These factors are not restrictive, and "[e]ach case must be
decided on its own facts."  Hodge, 802 F.2d at 61.

Here, it is not clear whether McCain's claims against the
remaining Defendants have sufficient merit to warrant the
appointment of counsel.  Even assuming such merit, however,
the Court will not appoint counsel at this time.  McCain has
not demonstrated that he will be unable to investigate the
critical facts of the case.  Nor has he shown that conflicting
evidence will require expert cross-examination.  McCain's
extensive pleadings show he is able to thoroughly present his
claims, and the legal issues, thus far, do not appear to be
particularly complex.  Finally, the Court sees no reason why
appointment of counsel will be more likely to lead to a just
determination.  The motion for appointment of counsel is
therefore DENIED.

## Conclusion

For the reasons set forth above, Matheson's motion to
dismiss (Doc. 12) is GRANTED with respect to all federal
claims, and DENIED with respect to McCain's state law claim.
Burger King's motion to dismiss (Doc. 14) is DENIED.  McCain's
motion to amend/supplement the Complaint (Doc. 25) is DENIED
without prejudice.  If the plaintiff wishes, he may submit
another motion to amend, together with a red-lined version of

a proposed Amended Complaint that (1) does not allege the
claims the Court has found futile, and (2) clearly designates
additions and deletions.  A non-redlined reproduction of the
the Amended Complaint must also be submitted.  McCain's motion
for appointment of counsel (Doc. 3) is DENIED.

     SO ORDERED.

     Dated at Brattleboro, in the District of Vermont, this
1st day of February, 2012.


                     /s/ J. Garvan Murtha
                     Hon. J. Garvan Murtha
                     United States District Judge